IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM C. ABERCROMBIE,<br>Individually and on Behalf of All Others<br>Similarly Situated,<br><br>                Plaintiff,<br><br>    v.<br><br>PRESSLEY RIDGE,<br><br>                Defendant. | Civil Action No. 09-0468<br><br>Judge Arthur J. Schwab<br><br>Special Master Donald E. Ziegler |

## REPORT AND RECOMMENDATION ON MOTION FOR CONDITIONAL CERTIFICATION

Before the Special Master is Plaintiff's Motion for Conditional Certification of a Collective Class.[1] Plaintiff seeks to have the United States District Court for the Western District of Pennsylvania conditionally certify, pursuant to 29 U.S.C. §216(b), a collective class of individuals who were formerly employed by Defendant, Pressley Ridge, as teachers/counselors at Defendant's Ohiopyle, Pennsylvania facility. After careful consideration of the parties' arguments on the issue, we recommend that the Court grant the motion and conditionally certify a collective class for the reasons set forth below.

I.     PROCEDURAL BACKGROUND

Plaintiff, William C. Abercrombie, filed this action, individually and on behalf of those similarly situated, in the United States District Court for the Middle District of Pennsylvania asserting causes of action under the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* ("FLSA"),

---

[1] The motion was filed on behalf of plaintiff William C. Abercrombie, who is the only named plaintiff in the Amended Complaint, and five other former T/Cs at Ohiopyle, Ryan Paglia, Daniel Ackerman, Donald Snow, Michael Taylor and Josh Jaros, who have all since consented to "opt in" to the action (the "Opt-In Plaintiffs").

the Pennsylvania Minimum Wage Act, 43 P.S. §333.101 *et seq.* ("PMWA"), and the Pennsylvania Wage Payment and Collection Law, 43 P.S. §260.1 *et seq.* ("WPCL"). Plaintiff initially sought to prosecute the FLSA claim as a "nationwide collective class" action pursuant to 29 U.S.C. §216(b), and the PMWA and WPCL claims as a Rule 23 class action on behalf of a class of persons who were employed by Defendant in Pennsylvania.

Thereafter, Plaintiff voluntarily dismissed the PMWA and WPCL claims and the action was transferred to the United States District Court for the Western District of Pennsylvania. Plaintiff now moves for conditional certification of a collective class under the FLSA, limited to those individuals who were employed as teacher/counselors ("T/Cs") by Defendant at its Ohiopyle, Pennsylvania facility only. Plaintiff proposes a collective class of potential opt-in litigants as follows:

> All persons during the applicable statutorily defined period who:
> (i) were former teachers/counselors employed by Pressly Ridge at the Ohiopyle facility; (ii) were not compensated for all the hours that they actually worked in a given workweek including hours designated for sleep; (iii) were not paid overtime compensation at a rate not less than one and one-half (1.5) times their regular hourly rate for work performed beyond forty (40) hours, especially for work performed during designated sleep hours; and (iv) choose to opt-in to this action.

See Plaintiff's Motion, page 1.

II.   RELEVANT FACTS

Pressly Ridge is a non-profit corporation that provides an array of services and programs to children and youth with challenging behaviors. One of the facilities operated by Pressly Ridge was a wilderness camp located in the Laurel Highlands of Western Pennsylvania (the "Ohiopyle facility"), where it provided treatment services to troubled youths. The Ohiopyle facility closed in June 2008.

2

Plaintiff and the Opt-In Plaintiffs were each employed by Pressly Ridge at the Ohiopyle facility as T/Cs. The T/Cs at Ohiopyle were responsible for supervising groups of 8-12 children who resided at various campsites located at the facility. They worked with the resident children on various wilderness type activities such as building bridges, building tents, etc. The facility also included a classroom building where more traditional instruction occurred.

The T/Cs who stayed overnight with the residents typically worked a minimum 2½-day (or 56-hour) shift, including two overnight periods, although the shifts would occasionally be longer. Every 24-hour period included 8 hours of designated "sleep time." The T/Cs were not provided private sleeping quarters during the 8 hours designated for sleep time; rather, they would spend that time in quarters that were also occupied by the residents – a cabin during cold weather months and an open-air tent during the warm weather months. Plaintiff and the Opt-In Plaintiffs assert that, because of various nighttime interruptions and work responsibilities, they generally did not get 5 hours of sleep during the designated sleep hours.

Pursuant to the written policy of Pressly Ridge, which is consistent with the applicable law, the T/Cs were not compensated for the 8 hours of designated sleep time unless they performed work-related functions during that period of time, recorded the work time on their time sheets, and/or unless they achieved less than 5 hours of sleep, in which case they were compensated for the full 8-hour sleep time period. Pressly Ridge maintained the following Sleep Time Policy:

> **Sleep Time**
>
> For every 24-hour period you work on an Overnight Shift, you will be given 8 hours of sleep time. Your sleep time will be scheduled according to the needs of the Program.
>
> You will not be paid for your sleep time. However, if you are required to handle a work-related matter during the sleep time, you will be paid for the time you are working provided that it is

3

> properly recorded. In addition, if your sleeping time is interrupted
> to such an extent that you cannot get at least five hours sleep
> during the scheduled 8-hour period, then all hours of the sleeping
> period are compensable hours of work. The five hours of sleep
> need not be continuous, uninterrupted hours of sleep.

Pressly Ridge also maintained policies requiring the T/Cs to complete time sheets that accurately recorded their work time, including any interruptions to their designated sleep time. Further, in an October 30, 2006 memorandum that was distributed to all T/Cs at the Ohiopyle facility, Robin Renquest, the Acting Program Director at Ohiopyle, specifically advised the T/Cs of the following:

> Staff are paid for hours worked. Sleep time is not a paid event
> unless a staff person must be woken up and is dealing with kid
> issues or crisis and their intervention is required. When staff are
> up at night, the time spent dealing with the youth is time worked
> and is paid. In short, sleeping time is not paid during your
> regularly scheduled 40 hours OR during any additional hours
> including over time.

Abercrombie and the Opt-In Plaintiffs acknowledge the existence of these policies and the October 30 memorandum, and admit that the written policies are consistent with the requirements of the FLSA. They contend, however, that Pressly Ridge violated its own policies and, therefore, the FLSA, by (i) failing to provide the T/Cs with adequate sleeping facilities; (ii) verbally discouraging the T/Cs from reporting interruptions in their sleep hours on their time sheets; and (iii) preventing the T/Cs from regularly achieving at least 5 hours of sleep per night.

With respect to their claim of inadequate sleeping facilities, Plaintiff and the Opt-In Plaintiffs state in their affidavits that they were not provided "private sleeping quarters" and, in fact, they "always slept within a few feet or within arm's reach" of residents. Abercrombie and the Opt-In Plaintiffs further state that the cabins and tents in which they slept did not have private bedrooms, bathroom facilities or running water. Regarding their sleep time compensation claims, Plaintiff and the Opt-In Plaintiffs claim that the supervisors at Pressly

Ridge "made clear" that "handling interruptions and completing [] paperwork" during sleep hours was not compensable, and that only a "major interruption that required a significant amount of time to resolve should be reported on [the] time sheet." Further, they claim that Pressly Ridge supervisors discouraged T/Cs from seeking compensation for any of the designated sleep hours. Finally, they assert that, because of frequent work-related interruptions and other work duties (such as completing required paperwork), they regularly failed to achieve 5 hours of sleep per night, and Pressly Ridge failed to compensate the T/Cs for the full 8-hour period.

Based upon these facts, Plaintiff and the Opt-In Plaintiffs assert that they are "similarly situated" to all of the T/Cs who worked at the Ohiopyle facility, and that the district court should conditionally certify the proposed collective class. We agree.

III.   LEGAL ANALYSIS

The FLSA governs standard hourly wage practices and requires employers to pay employees compensation at a rate of at least 1.5 times the regular rate when they work in excess of 40 hours. 29 U.S.C. §207(a)(1). Where, as here, the employer is alleged to have violated this provision, an employee may pursue an action in a representative capacity for "other employees similarly situated." 29 U.S.C. §216(b). Unlike a Rule 23 class action, only those employees who voluntarily opt-in to the litigation become class members. Section 216(b) provides, in relevant part, as follows:

> An action to recover [for violation of the minimum wage or maximum hours provisions of the FLSA] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

5

29 U.S.C. §216(b) (brackets supplied).

The FLSA does not define the term "similarly situated," but the district courts in this Circuit have adopted a two-stage test to determine whether potential class members are similarly situated. *See, e.g., Kuznyetsov v. West Penn Allegheny Health System*, No. 09-CV-379, 2009 WL 1515175 (W.D. Pa. June 1, 2009). In *Kuznyetsov*, Chief Judge Ambrose described the two-stage test as follows:

> During the initial notice stage, the court determines whether a class should be conditionally certified for the purpose of notice to potential opt-in plaintiffs and for pretrial discovery regarding their individual claims. In so doing, the court preliminarily determines whether the proposed class consists of similarly situated employees. Courts generally examine the pleadings and affidavits of the parties to decide whether the proposed class members are similarly situated, and utilize a "fairly lenient" standard in rendering such a determination. If the plaintiff meets the requisite showing, the class is conditionally certified for the purpose of notice and discovery. Once the class is conditionally certified, notice is given to the potential plaintiffs so that they may elect whether to opt-in to the action.
>
> In the second stage of class certification, after the court is more fully informed through discovery, the defendant may move to decertify the class on the basis that the "similarly situated" standard has not been met and the court makes its final certification decision.

*Id* at *1-2 (internal citations omitted).

Here Abercrombie seeks only conditional certification of a collective class, therefore, only stage one of the test is implicated here. Although the decisions of the district courts in this Circuit are not completely in accord as to the appropriate level of proof necessary for a stage one determination of "similarly situated," the recent decisions of the courts in this district have required a plaintiff "show a modest factual nexus between their situation and that of the proposed class members." *Id.* at *2 (internal citations omitted). This "modest factual showing" approach is designed to "'enable[] a court to narrow the potential class from all of a defendant's employees

6

to just those employees who can possibly have a claim under the same policy as allegedly affected Plaintiffs." *Id.* (*quoting Smith v. Sovereign Bancorp*, No. 03-2420, 2003 WL 22701017, *3 (E.D. Pa. Nov. 13, 2003). While conditional certification is not automatic under this "fairly lenient" standard, it will be granted if a plaintiff "demonstrate[s] some evidence, 'beyond mere speculation,' that [the defendant's] policy affected other employees." *Bishop v. AT&T Corp.*, 256 F.R.D. 503, 507 (W.D. Pa. 2008)(*quoting Parker v. NutriSystem, Inc.*, No. 08-1508, 2008 WL 4399023, at *2 (E.D. Pa. Sept. 26, 2008)).

Here, Plaintiff alleges that Pressly Ridge violated the FLSA by maintaining policies that: (i) failed to provide the T/Cs at Ohiopyle private sleeping quarters during designated sleep hours; (ii) discouraged the T/Cs from recording interruptions to their sleep time, and (iii) prevented the T/Cs from achieving 5 hours of sleep time per night. In support of these claims, Abercrombie and the Opt-In Plaintiffs have each submitted an affidavit attesting to the alleged violations and have alleged that these policies were applicable to all T/Cs at Ohiopyle. Accordingly, in our judgment, Plaintiff has established, under the "fairly lenient" standard described above and for purposes of conditional certification only, that he is similarly situated to the class of T/Cs employed at Ohiopyle, who worked shifts with designated sleep times during the relevant period.

In opposing conditional certification, Pressly Ridge first argues that its failure to provide T/Cs with private sleeping quarters during designated sleep time does not violate the FLSA as a matter of law. Pressly Ridge asserts that the standard relied upon by Plaintiff for the proposition that the T/Cs were entitled to private sleeping quarters, 29 C.F.R. §785.23, is inapplicable, and that a court, confronted with similar facts, *Spellman v. VisionQuest Nat'l, Ltd.*, No. 96-235E, 1998 WL 1997458 (W.D. Pa. Feb. 13, 1998), held that youth counselors who took youth offenders on camping trips were not entitled to private sleeping quarters during sleep time.

7

Similarly, Pressly Ridge argues that, in view of the written policies and the October 30 memorandum, Plaintiff cannot, as a matter of law, establish that Pressly Ridge maintained policies that discouraged T/Cs from recording sleep interruptions, or caused the T/Cs to achieve less than 5 hours sleep per night without appropriate compensation. In support of this argument, Pressly Ridge submitted time records establishing that the majority of the T/Cs at Ohiopyle, including Plaintiff and 4 of the 5 Opt-In Plaintiffs, recorded sleep interruptions during the relevant time period. In addition, Pressly Ridge submitted affidavits from two current employees who worked as T/Cs at Ohiopyle and who refute the claims of Abercrombie.

In short, Pressly Ridge argues that conditional certification should be denied because Plaintiff cannot, as a matter of law, state any viable claims on the merits. While this may ultimately prove to be true, such an argument is irrelevant to the conditional certification issue, and it is inappropriate for a court to consider the merits of the claims during a stage one certification analysis. *Bishop*, 256 F.R.D. at 507; *Camesi v. UPMC*, No. 09-85J, 2009 WL 1361265, at *3 (W.D. Pa. May 14, 2009)(*quoting Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F.Supp.2d 200, 205-206 (N.D.N.Y. 2009)( "'a plaintiff's burden at this preliminary stage is minimal,' and 'when making [the notice determination] *the court does not weigh the merits, resolve factual disputes, or make credibility determinations*'"))(emphasis in original).

Pressly Ridge further argues that the claims asserted by Plaintiff will require "individualized inquiries that are inappropriate for conditional certification of a collective class." In doing so, Pressly Ridge relies primarily on the recommendation of the Special Master that was adopted by the district court in *Bond v. National City Bank of Pa.*, No. 05-CV-0681, 2006 WL 1744474 (W.D. Pa. June 22, 2006). We disagree because the facts in *Bond* are distinguishable from those in the instant case.

In *Bond,* the plaintiffs sought conditional certification of all 857 full-time nonexempt employees who performed various job functions at 215 branch offices throughout Western Pennsylvania. In recommending that the motion for conditional certification be denied, we found that conditional certification was inappropriate due in part to the fact that an examination of the claims at issue would have required:

> a fact-intensive, individualized inquiry of the job position, job duties, work history, and alleged individual branch policies of every prospective plaintiff. In fact, the Named Plaintiffs themselves allege varying circumstances at each branch. * * * The diverse nature of the class and the unique circumstances of each employee at each branch render conditional class certification inappropriate.

In contrast to *Bond,* the collective class that Abercrombie seeks to certify is limited to 32 employees at most; to-wit, the Defendant's employees who held the same job position (T/C), and who worked at the same location (Ohiopyle) as Plaintiff and the Opt-In Plaintiffs. Moreover, unlike *Bond,* the alleged violation here is essentially confined to a single policy violation; to-wit, Pressly Ridge's failure to appropriately compensate the putative class for work performed during sleep hours. Thus, and again unlike *Bond,* it is not apparent that individualized inquiries would create an unmanageable evidentiary morass.

In any event, Chief Judge Ambrose has suggested, and we agree, that in most cases, the question whether individualized inquiries would predominate should be resolved during stage two of the certification analysis, that is, when the factual record is more complete. *See Bishop,* at 509, n. 7 (rejecting defendant's "individualized inquiries" argument at the conditional certification stage and stating that such argument is "relevant to a stage two decertification issue after discovery has closed."); *Kuznyetsov, supra,* at 5 ("Any dissimilarities [among class members' claims] may be reevaluated in the second stage of class certification, after discovery is complete.").

## IV. CONCLUSION

For the reasons set forth above, we find that Plaintiff has provided a "modest factual showing" that he is "similarly situated" to the members of the proposed class such that conditional certification of the proposed class is appropriate. We also find that the alleged claim for which class certification is sought is limited to Pressly Ridge's alleged failure to properly compensate for sleep time. Therefore, the class should be defined to include only this claim and no others. With this clarification to the proposed class definition, we recommend that the district court grant the motion for conditional certification of the class.

Dated: September 22, 2009

_____
Donald E. Ziegler, Special Master